758 S.E.2d 711

**In the Matter of David Allen SWANNER, Respondent.**

Appellate Case No. 2014–000725.

No. 27389.

Supreme Court of South Carolina.

Submitted May 6, 2014.

Decided May 28, 2014.

proceedings as evidence of prior misconduct solely upon issue of sanction to be imposed).

192

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Harvey MacLure Watson, III, Esquire, of Ballard Watson Weissenstein, of West Columbia, for respondent.

PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to the imposition of any sanction con-

tained in Rule 7(b), RLDE, with conditions. We accept the Agreement and suspend respondent from the practice of law in this state for two (2) years and impose conditions as stated hereafter. The facts, as set forth in the Agreement, are as follows.

### Facts

#### Trust Account Mismanagement

For approximately fifteen years, respondent has practiced law as a solo practitioner. For several years, he delegated monthly reconciliation of the trust account and operating account to his spouse and bookkeeping to other non-lawyer staff in his office. Respondent's spouse and non-lawyer assistants were not specially trained in accounting and respondent provided them with no specific instructions regarding proper recordkeeping and reconciliation of a law firm trust account.

During the time that respondent's spouse was supposed to be conducting monthly reconciliations, respondent did not review any accounting reports. In fact, respondent's spouse was not conducting the reconciliations each month. Further, the reconciliations that she was conducting were not compliant with Rule 417, SCACR. Specifically, respondent's wife was not reconciling the adjusted bank balance to the client ledger balance for a three-part reconciliation required by the rule. In September 2010, respondent separated from his spouse and she discontinued her accounting work for the law firm. From that time forward, respondent failed to conduct any monthly reconciliations of his trust account.

During the time period relevant to this disciplinary investigation, respondent's practice consisted mainly of personal injury and workers' compensation cases handled for claimants on a contingency fee basis. Respondent's routine practice for disbursing settlements was to have a non-lawyer staff person deposit the settlement check (endorsed by respondent with the client's power of attorney) into the trust account, then prepare the disbursement statement and trust account checks. The non-lawyer assistant would enter the deposit and the checks into respondent's accounting software. The checks prepared by the non-lawyer assistant would be typed and would reflect

the client's name or file number and the purpose of the check in the memo line.

In a five day period in early 2011, respondent negotiated three handwritten trust account checks for round numbers payable to himself totaling $6,500.00. This unusual trust account activity caused a bank representative to alert the Commission on Lawyer Conduct (the Commission). At the time the disciplinary investigation was initiated, respondent's records reflected a number of negative client ledger balances. Respondent's client trust account was short approximately $42,500.00.

The disciplinary investigation revealed that, on at least fourteen occasions in 2011, respondent issued trust account checks payable to himself outside of his normal practice. These checks did not reflect a client name, file number, or other reference. None of these checks were recorded in the accounting journal or any client ledger in respondent's accounting software. Most of these checks were handwritten by respondent. These checks totaled approximately $59,485.12.

Respondent asserts that he issued these checks outside his normal practice because of urgent needs for funds and the unavailability of his non-lawyer assistant. Respondent claims that he believed he had sufficient earned fees in trust at the times he issued the checks, although he did not refer to any documentation or software records to confirm this prior to issuing the checks. The $42,500.00 defalcation in respondent's trust account resulted from the fact that the checks he wrote outside his normal practice were not entered into his accounting software and appropriate checks for fees had either previously, or were subsequently, issued in the normal course of disbursement by his non-lawyer staff. The resulting client ledger shortages and a number of other accounting and transcription errors were not discovered because respondent was not conducting the required monthly reconciliations.

During the course of the investigation, respondent restored the funds to his trust account through a combination of depositing personal funds and leaving earned fees on new settlements in the account. Respondent has now retained the services of an outside accountant to reconstruct his records and reconcile his account.

## *Loans to Clients*

On occasion, respondent arranged for his father to loan funds to respondent's clients with the understanding that the loans would be repaid at the time the clients' claims were resolved. Respondent arranged loans from his father to clients approximately ten times over a five year period. In each case, respondent drafted promissory notes to memorialize these loans. The promissory notes set forth certain repayment terms, including the interest rate and the requirement that the loans be paid in full at the time of recovery of funds from the client's claim. However, the promissory notes did not contain important terms necessary to protect the clients' interests, such as how the interest would be calculated and whether or not the client would be responsible for repayment in the event no recovery was obtained.

Although respondent told his clients that his father was the source of the loans, he did not obtain his clients' informed consent to the conflict of interest as required by Rule 1.7(b) of Rule 407 of the Rules of Professional Conduct. As defined by the Rules of Professional Conduct, informed consent required respondent to communicate to the client reasonably adequate information about the conflict of interest presented by the loan and an explanation about the material risks of, and reasonable alternatives to, obtaining a loan from respondent's close family member, and the informed consent must be confirmed in writing. *See* Rule 1.0(g), RPC (defining informed consent).

Although no complaints have been made by any client about respondent's arrangement of loans from his father and respondent received no personal benefit from any of the loans, respondent admits he failed to comply with the disclosure and writing requirements of the Rules of Professional Conduct regarding this conflict of interest.

## *Client Matter*

Client hired respondent to assist him in a workers' compensation claim arising from an incident on May 28, 2010. A hearing was held on December 8, 2010. Respondent received the order denying the claim on January 12, 2011. Respondent prepared a Request for Commission Review with a cover letter and a certificate of service on opposing counsel dated January 26, 2011. The envelope addressed to opposing coun-

sel containing the Request for Commission Review, cover letter, and certificate of service was postmarked on February 2, 2011. The Request for Commission Review was received by the Commission on February 3, 2011.

Workers' compensation regulations state that the "Commission will not accept for filing a [Request for Commission Review] that is not postmarked or delivered to the Commission by the fourteenth day from the date of receipt of the [order]." 8 S.C.Code Ann. Reg.67–701 (2012). The regulations further state that a Request for Commission Review is deemed filed on the date of service on the Commission as reflected on an accompanying certificate of service or, in the absence of such, on the date of actual receipt by the Commission. Respondent's certificate of service reflected only service on opposing counsel, not on the Commission; therefore, according to the regulations, the request was deemed filed on the date it was received by the Commission.

Respondent's Request for Commission Review was dismissed on February 3, 2011, on the grounds that it was not timely filed, citing the appeal deadline as January 31, 2011 (fourteen days plus a five day grace period for mailing) and the filed date as February 3, 2011.

On March 17, 2011, approximately six weeks after the dismissal of the Request for Commission Review, respondent sent a letter requesting that his request for review be reinstated. On March 25, 2011, respondent received an email from the Commission informing him of the basis for the dismissal and advising him that he could file a Motion to Reinstate the Appeal.

On August 2, 2011, approximately nineteen weeks after receipt of the Commission's email, respondent filed and served a Motion to Reinstate Appeal. In that motion, respondent asserted that he mailed his Request for Commission Review on January 26, 2011. Even if that were accurate, the regulations specifically state that the appeal is deemed filed on the date reflected on the certificate of service on the Commission or, absent such a certificate, on the date of actual receipt by the Commission. Respondent did not prepare a certificate of service on the Commission; therefore, the date of filing was February 3, 2011, the date of actual receipt by the Commission. Respondent's Motion to Reinstate Appeal was denied.

 

Respondent admits he failed to diligently pursue the appeal of the decision denying his client's claim.

### *Law*

 Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client); Rule 1.7 (lawyer may represent client where there is a concurrent conflict of interest only under circumstances provided by rule, including affected client gives informed consent in writing); Rule 1.15(a) (lawyer shall hold client property separately from lawyer's own property); Rule 5.3 (lawyer shall be responsible for conduct of non-lawyer employee); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice). In addition, respondent admits he violated the provisions of Rule 417, SCACR.

Respondent also admits he has violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rules 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct or other rules of this jurisdiction regarding professional conduct of lawyers); Rule 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute administration of justice); and Rule 7(a)(6) (it shall be ground for discipline for lawyer to violate oath of office taken to practice law in this state).

### *Conclusion*

 We accept the Agreement for Discipline by Consent and suspend respondent from the practice of law in this state for two (2) years.[1] In addition, respondent shall: 1) pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission within thirty (30) days of the date of this opinion; 2) complete the Legal Ethics and

---

1. Respondent's disciplinary history includes admonitions issued in 1999 and in 2001. *See* Rule 7(b)(4), RLDE (admonition may be used in subsequent proceedings as evidence of prior misconduct solely upon issue of sanction to be imposed). In addition, respondent received a letter of caution warning him to adhere to some of the same Rules of Professional Conduct cited in the current opinion. *See* Rule 2(r), RLDE (fact that letter of caution has been issued shall not be considered in subsequent disciplinary proceeding against lawyer unless the caution or

Practice Program Ethics School and Trust Account School and submit proof of completion to the Commission within nine (9) months of date of this opinion; 3) if reinstated, for the two (2) year period following his reinstatement, respondent shall retain the services of an accountant trained in law office accounting to conduct monthly reconciliations and respondent shall file monthly reconciliations and all relevant source documents with the Commission; 4) for two years from the date of this opinion, respondent shall retain a medical doctor or mental health professional and submit quarterly reports from the treatment provider to the Commission; and 5) within twenty (20) days from the date of this opinion, respondent shall enter into a two (2) year monitoring contract with Lawyers Helping Lawyers and submit quarterly reports from his monitor to the Commission.

Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.

BEATTY, J., not participating.

warning contained in letter of caution is relevant to the misconduct alleged in new proceedings).