# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Eric J. Davidson, Respondent.
Appellate Case No. 2013-000691

Opinion No. 27432
Heard August 7, 2013 – Filed August 13, 2014

## DISBARRED

Disciplinary Counsel Lesley M. Coggiola and Assistant
Disciplinary Counsel Barbara M. Seymour, of Columbia,
for Office of Disciplinary Counsel.

Eric J. Davidson, of Baltimore, Maryland, pro se
Respondent.

**PER CURIAM:**   In this attorney discipline matter, the Office of Disciplinary
Counsel (ODC) filed formal charges against Eric J. Davidson (Respondent) based
on allegations of misconduct.  On July 9, 2012, Respondent was served with a
notice of filing of formal charges and formal charges by certified mail.  After two
extensions, Respondent did not file an answer.

By administrative order dated December 14, 2012, the Commission on
Lawyer Conduct (the Commission) declared Respondent in default for failing to
respond to the formal charges against him; thus, it deemed the facts contained in
the formal charges admitted.[1]

---

[1] *See* Rule 24(a), RLDE, Rule 413, SCACR ("Failure to answer the formal charges
shall constitute an admission of the allegations. On motion of disciplinary counsel,
the administrative chair may issue a default order setting a hearing to determine the
appropriate sanction to recommend to the Supreme Court.").

On February 26, 2013, a Panel of the Commission (the Panel) held a hearing to determine the appropriate sanctions. Following this hearing, the Panel recommended that Respondent be disbarred, as well as other conditions.

We adopt the Panel's recommendation of disbarment.

## FACTUAL/PROCEDURAL HISTORY

*A. Complaint*

Respondent hired a lawyer to represent him in a domestic matter (the domestic lawyer). After the representation ended, the domestic lawyer hired another lawyer (the settlement lawyer) to collect unpaid attorneys' fees from Respondent. The settlement lawyer negotiated an agreement with Respondent whereby Respondent agreed to pay the domestic lawyer two payments of $2,000.

In January 2009, Respondent made the first payment. In March 2009, Respondent sent the settlement lawyer the second $2,000 payment. Upon receipt of the check, the settlement lawyer noticed that Respondent wrote the check from his trust account. He telephoned Respondent, who stated that he had earned a fee and that he was paying his settlement obligation from that fee. The settlement lawyer informed Respondent that it was improper to pay his personal obligations directly from a trust account, even if it was an earned fee. Respondent agreed to replace the trust account check with a personal check. Respondent asked the settlement lawyer if he could wire the payment directly into his account. The settlement lawyer agreed, and Respondent completed the wire transaction. When the settlement lawyer later received confirmation from his bank, he noticed that the payment again drew on Respondent's trust account. Therefore, the settlement lawyer filed a complaint with ODC.

*B. Financial Recordkeeping Investigation*

As a result of the complaint, ODC initiated an investigation and uncovered further financial misconduct. From 1988 until 2003, Respondent was a partner in a law firm practicing general litigation and real estate. From the Fall of 2003 until April 2004, Respondent had a solo practice, but kept open various trust accounts from his prior partnership. In 2004, Respondent entered into a new partnership in which he held a majority interest, Davidson & Bradshaw. Respondent continued to practice in the area of real estate law, while his new law partner handled tax, business, and estate matters at the firm. Davidson & Bradshaw opened several

trust accounts for use by the firm, but Respondent kept open various trust accounts from his prior law firms.

In June 2009, Respondent moved to Maryland.[2]  In February 2010, he began to perform legal work for a nonprofit agency; however, Davidson & Bradshaw continued to operate until September 2010.

Until 2004, Respondent's title insurance company reconciled some of his trust accounts; other trust accounts were not reconciled.  From 2004 until 2007, Respondent did not reconcile any of his trust accounts.  In 2007, Respondent hired a bookkeeper to reconcile the Davidson & Bradshaw's trust accounts; however, Respondent did not supervise the reconciliation process and did not review any reports from the bookkeeper.  Moreover, Respondent did not make arrangements for the bookkeeper to reconcile several of the trust accounts he kept open from his former law practices, some of which still contained client funds.

In addition, paralegals employed by Davidson & Bradshaw prepared settlement statements for Respondent's real estate closings, entered the data into bookkeeping software, and prepared disbursement checks from an account designated as the real estate trust account.  Respondent's paralegals were given signatory authority on this real estate trust account.  Respondent did not verify that checks matched settlement statements prior to closing or disbursement and failed to ensure that all earned fees were withdrawn from the trust account in a timely fashion.

Furthermore, Respondent did not maintain an accounting journal, accurate client ledgers, bank statements, images of canceled checks, or deposit records as required by Rule 417, SCACR.  Likewise, Respondent failed to identify and correct numerous discrepancies in various client transactions because the accounts were not being properly reconciled.

When Respondent moved to Maryland in 2009, he took no steps to disburse the funds in the old trust accounts or make any steps to close the accounts.  One of those trust accounts contained positive ledger balances, or undispersed client

---

[2] At oral arguments before the Court, Respondent stated that, even at the time of the formation of the partnership, it had always been his intention to "phase out" his work at Davidson & Bradshaw and move into the non-profit sector.

funds, dating to 2004 and totaling approximately $1,000.  That account also had thirteen outstanding checks totaling approximately $3,600 dating to November 2005.

Another old trust account contained a balance of approximately $41,000.  The limited records provided by Respondent indicate that, with respect to that trust account, there were (1) 95 outstanding checks totaling approximately $21,000 and dating to 2003; (2) approximately $25,000 in positive ledger balances, or undispersed client funds, some as old as ten years; (3) seven negative ledger balances totaling approximately $1,900; and (4) approximately $5,600 in unidentified transactions.  Respondent did not produce any bank statements for this account.  Since the initiation of these proceedings, Respondent has neither produced an accounting of these funds, nor personally attempted to reconcile this account.

A final trust account has had a balance of over $10,000 since at least 2008.  Respondent did not produce any reconciliations of this account or an accounting of these funds.[3]

Based on these facts, ODC alleged that Respondent engaged in misconduct as defined in Rule 7(a), RLDE, Rule 413, SCACR, in that he violated the Rules of Professional Conduct, Rule 407, SCACR: Rules 1.15, 8.4(d), and 8.4(e); and Rules 7(a)(1) and 7(a)(5), RLDE, Rule 413, SCACR.

*Panel's Recommendation*

Respondent did not appear before the Panel, and therefore the Panel deemed him to have admitted the factual allegations and conceded the merits of the allegations of misconduct.[4]  Therefore, the Panel found Respondent violated the

---

[3] During ODC's investigation, Respondent provided limited financial records to ODC.  Rather, his former law partner provided the requisite information to the best of his ability, as he was unaware of the existence of all of the former trust accounts.  He further participated in the investigation as to all of the accounts owned by Davidson & Bradshaw.  ODC did not uncover any wrongdoing by Respondent's former law partner.

[4] *See* Rule 24(b), RLDE, Rule 413, SCACR ("If the respondent should fail to appear when specifically so ordered by the hearing panel . . . , the respondent shall be deemed to have admitted the factual allegations which were to be the subject of

following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.15 (Safekeeping Property), Rule 8.4(d) (Conduct involving Dishonesty, Fraud, Deceit or Misrepresentation), and Rule 8.4(e) (Conduct Prejudicial to the Administration of Justice). The Panel also determined the Respondent violated Rule 417, SCACR (Financial Recordkeeping).

The Panel considered two aggravating circumstances: Respondent's prior disciplinary offenses[5] and Respondent's failure to answer the formal charges or appear at the hearing.

Based on these findings, the Panel recommended that this Court: (1) disbar Respondent from the practice of law; (2) order Respondent, within 120 days of this order, to file a report of outstanding client obligations and unidentified funds in all trust accounts, including documentation demonstrating that Respondent has fully disbursed any remaining client funds from all accounts and will close those accounts; (3) order Respondent to pay restitution to any clients who were underpaid; (4) order Respondent to pay any unidentified funds to the Lawyers' Fund for Client Protection; and (5) pay the costs of these proceedings.

## DISCUSSION

The sole authority to discipline attorneys and decide appropriate sanctions rests with this Court. *In re Welch*, 355 S.C. 93, 96, 584 S.E.2d 369, 370 (2003); *In re Thompson*, 343 S.C. 1, 10–11, 539 S.E.2d 396, 401 (2000). We are not bound by the Panel's recommendation and may make our own findings of fact and conclusions of law. *In re Hazzard*, 377 S.C. 482, 488, 661 S.E.2d 102, 106 (2008). Nonetheless, the findings and conclusions of the Panel are entitled much respect and consideration. *Thompson*, 343 S.C. at 11, 539 S.E.2d at 401.

---

such appearance and to have conceded the merits of any motion or recommendations to be considered at such appearance.").

[5] Respondent's disciplinary history includes an admonition in 2001 citing Rules 1.7 (Conflict of Interest: Current Clients) and 1.9 (Duties to Former Clients) of the Rules of Professional Conduct, Rule 407, SCACR; and an admonition in 2006 citing Rules 1.5 (Fees), 4.1 (Truthfulness in Statements to Others), 8.4(a) (Violating the Rules of Professional Conduct), 8.4(b) (Criminal Act Reflecting Adversely on Lawyer's Honesty), and 8.4(e) (Conduct Prejudicial to the Administration of Justice) of the Rules of Professional Conduct, Rule 407, SCACR.

We agree with the Panel that Respondent committed misconduct with respect to the matters discussed above. While Respondent appeared and represented himself at the hearing before this Court, he took no exception to the Panel's findings. Accordingly, he is "deemed to have accepted the Panel's findings of fact, conclusions of law, and recommendations" as to these matters. *In re Prendergast*, 390 S.C. 395, 396 n.2, 702 S.E.2d 364, 365 n.2 (2010) (*citing* Rule 27(a), RLDE, Rule 413, SCACR, which states, "The failure of a party to file a brief taking exceptions to the report constitutes acceptance of the findings of fact, conclusions of law, and recommendations.").

Thus, we find Respondent violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.15 (Safekeeping Property); Rule 8.4(d) (Conduct involving Dishonesty, Fraud, Deceit or Misrepresentation), and Rule 8.4(e) (Conduct Prejudicial to the Administration of Justice); and Rule 417,SCACR (Financial Recordkeeping).

Respondent's misconduct, coupled with his failure to cooperate with or answer the ODC investigation, failure to appear before the Panel, and failure to provide any explanation for his lack of diligence in resolving this disciplinary matter, warrant disbarment from the practice of law.[6]

This Court has recognized that "the primary purpose of disbarment . . . is the removal of an unfit person from the profession for the protection of the courts and the public, not punishment of the offending attorney." *In re Pennington*, 393 S.C. 300, 304, 713 S.E.2d 261, 263 (2011) (*citing In re Burr*, 267 S.C. 419, 423, 228 S.E.2d 678, 680 (1976)). Moreover, a central purpose of the disciplinary process is to protect the public from unscrupulous and indifferent lawyers. *In re Hall*, 333 S.C. 247, 251, 509 S.E.2d 266, 268 (1998). In *Hall*, this Court said:

> An attorney usually does not abandon a license to practice law without a fight. Those who do must understand that "neglecting to participate in a disciplinary proceeding is entitled to substantial

---

[6] Currently, Respondent is administratively suspended from the practice of law for failing to pay his bar dues and comply with Continuing Legal Education requirements.

weight in determining the sanction." An attorney's failure to answer charges or appear to defend or explain alleged misconduct indicates an obvious disinterest in the practice of law. Such an attorney is likely to face the most severe sanctions . . . .

333 S.C. at 251, 509 S.E.2d at 268 (quoting *Matter of Sifly*, 279 S.C. 113, 115, 302 S.E.2d 858, 859 (1983)) (alterations in original).

Not only did Respondent abandon his practice without proper closure, but he then failed to engage in these disciplinary proceedings, despite asking for numerous extensions of time.  During oral arguments before this Court, he could not explain his indifference toward resolving this matter.  Therefore, at that time, ODC took exception to the Panel's recommendation that Respondent be given 120 days to reconcile his trust accounts, and instead requested that the Court appoint a receiver to handle the reconciliation of his trust accounts and proper disbursement of the funds therein.  We agree with ODC that Respondent has been given numerous opportunities to reconcile his accounts, and even though it is in his best interests to do so, he has not.[7]  We find that the appointment of a receiver would best facilitate the closure of these accounts.

## CONCLUSION

Therefore, Respondent is disbarred.  Respondent is further ordered to pay the costs of these proceedings within 60 days.   Furthermore, a receiver shall be appointed by separate order to reconcile Respondent's files and accounts, pay restitution to any clients who were underpaid, or otherwise disperse funds from the accounts according their ownership.  In the event that unidentified funds remain in the accounts, at the end of his appointment, the receiver will relinquish those funds to the Lawyers' Fund for Client Protection, until the claims period expires.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

---

[7] Based on the limited records in the possession of ODC, most of the funds in these accounts appear to belong to Respondent.

**DISBARRED.**


**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**