# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Richard G. Wern, Respondent

Appellate Case No. 2020-000125

Opinion No. 27998
Heard August 27, 2020 – Filed October 7, 2020

## DISBARRED

John S. Nichols, Disciplinary Counsel, and Julie Kay
Martino, Assistant Disciplinary Counsel, both of
Columbia, for the Office of Disciplinary Counsel.

Desa Ballard, of Ballard & Watson, of West Columbia,
for Respondent.

**CHIEF JUSTICE BEATTY:** In this attorney discipline matter, Respondent
Richard G. Wern admitted misconduct in failing to perform monthly
reconciliations of his trust account, failing to keep adequate records, disbursing
before deposit on 735 client ledgers, failing to adequately supervise his non-lawyer
staff, comingling funds, and running trust-account shortages ranging from
$110,907 to $425,926. Following a hearing, a panel of the Commission on Lawyer
Conduct (the Panel) recommended Respondent receive a six-week definite
suspension in light of Respondent's repayment of the missing client funds and
unexplained delay by the Office of Disciplinary Counsel (ODC) in prosecuting this
matter. Although we find the inordinate delay by ODC troubling, we nevertheless
disbar Respondent.

## I.

Respondent was placed on interim suspension on November 6, 2013, after one of
his former associates filed a complaint against him alleging operational and case

management issues, including concerns related to the mismanagement of his trust account. *In re Wern*, 406 S.C. 222, 750 S.E.2d 212 (2013). Respondent filed a petition for reconsideration, and following a hearing, this Court lifted Respondent's interim suspension upon several conditions. Notably, Respondent was prohibited from accessing or controlling the law firm's trust or operating accounts. Instead, his associate was responsible for ensuring all of the requirements of Rule 417, SCACR, were met and for filing monthly reports with the Office of Disciplinary Counsel certifying compliance. *In re Wern*, S.C. Sup. Ct. Order dated Dec. 23, 2013 (Shearouse Adv. Sh. No. 1 at 104). Respondent's law license has remained active since December 2013.

Formal Charges were not filed against Respondent until May 6, 2019. The reason for this delay is unclear.[1] In his Answer, Respondent admitted the factual allegations and rule violations alleged in the Formal Charges, which are detailed below.

### A. Failing to Perform Monthly Reconciliations and Failing to Keep Proper Records

Prior to 2012, Respondent was not performing monthly three-way reconciliations of his trust account. Rather, at the end of the year, a member of Respondent's staff would perform a two-way reconciliation in preparation for filing the firm's tax return. Respondent admitted never having read Rule 417, SCACR,[2] and did not actively participate in the reconciliations of his trust account until late 2012, after the underlying disciplinary complaint was filed. Because Respondent failed to perform three-way reconciliations, he did not have adequate records to show that he held in trust monies he was required to maintain for each of his clients. He also failed to maintain client trust account ledgers and adequate receipts of deposits. These actions violated Rule 1 of Rule 417, SCACR, and Rule 1.15, RPC, Rule 407, SCACR.

### B. Disbursing Before Deposit, Comingling Funds, and Failing to Supervise Staff

Respondent delegated to his office manager the responsibility for determining

---

[1] We explore the factor of delay in Section III *infra*.

[2] Rule 417 governs financial recordkeeping and enumerates basic financial records and minimal accounting controls lawyers must maintain for lawyer trust accounts.

when to withdraw earned fees from the trust account. The office manager would routinely authorize and direct the transfer of money from the trust account to the operating account or the payroll account. From January 2011 to September 2013, there were more than 290 transfers from the trust account, which occurred with no notation of the associated client file and no documentation that any of the money being transferred was, in fact, earned fees. These bulk transfers of money resulted in disbursement before deposit on 735 client ledgers. Some deficits were tens of thousands of dollars, and many of the disbursements occurred months before deposit. In addition, Respondent routinely deposited funds into his trust account without proper attribution, and from time to time, he intentionally left earned fees in his trust account to ensure it was not overdrawn.

Respondent knew or should have known about his staff's actions in transferring money from the trust account to cover law firm expenses, payroll, and other distributions; however, Respondent failed to implement any measures to ensure the handling of the trust account complied with Rule 417, SCACR, and failed to ensure his non-lawyer staff's conduct was compatible with his professional obligations regarding handling client funds. These actions violated Rules 1.15(a), 1.15(f), 1.15(g), and Rule 5.3, RPC, Rule 407, SCACR.

### C. Trust Account Shortages

On January 19, 2012, a law firm formed by lawyers who formerly worked for Respondent requested that Respondent transfer client funds held in trust for his former client J.F. The client ledger balance indicated Respondent should have held in trust a total of $679,153, of which $347,335 was to be held in trust for J.F. However, the balance of Respondent's trust account was $253,227. Thus, Respondent's trust account was short by $425,926.

Around this time, Respondent liquidated some personal assets and made deposits into his trust account totaling $250,000. Despite these infusions of cash, his trust account was still short. After transferring monies held for J.F. to the successor law firm, Respondent's trust account balance should have been $358,067; however, the balance was only $37,641—a shortage of $320,426.

Respondent began performing the required three-way reconciliations beginning in October 2012. However, from November 2012 through August 2013, Respondent's trust account was short every month by $110,907. These actions violated Rule 1.15(f), RPC, Rule 407, SCACR. Respondent also violated Rule 2(c) of Rule 417, SCACR, by writing checks on the trust account to cash.

**II**.

A hearing before the Panel was held on August 28, 2019, to consider evidence in mitigation and aggravation and determine the proper sanction to recommend to this Court. As aggravating factors, the Panel considered Respondent's substantial experience in the practice of law and lengthy pattern of misconduct resulting in multiple rule violations, finding "Respondent undoubtedly should have known about and understood his ethical obligations to properly oversee the operation of his trust account and to protect and preserve the client funds that were entrusted to him." The Panel also highlighted Respondent's admission that he had never read Rule 417, SCACR, prior to ODC's investigation or performed any three-way reconciliations of his trust account before October 2013.

In mitigation, the Panel focused primarily on ODC's delay in bringing the disciplinary proceedings. The Panel observed the investigation was initiated in 2012, and Formal Charges were authorized in 2013; however, Formal Charges were not filed with the Commission on Lawyer Conduct until May 2019. In considering the appropriate sanction, the Panel observed:

> Had this case come before the Hearing Panel shortly after Formal Charges were authorized in 2013, then it is likely that this Hearing Panel would have considered a recommendation of disbarment due to the gravity of Respondent's misconduct and the risk of significant client harm caused by the misconduct. However, the Hearing Panel has struggled greatly with the length of time that this matter has been pending. Approximately seven years have passed since the misconduct occurred and, in the meantime, Respondent has continued to practice law without any additional disciplinary issues . . . .

The Panel ultimately recommended that Respondent receive a six-week suspension for the misconduct and be credited "time served" for the six weeks of interim suspension in 2013. The Panel further recommended Respondent be ordered to pay the costs of the proceedings and that the conditions prohibiting Respondent's trust account access and requiring monthly reports be lifted.

ODC takes exception to the Panel's analysis of aggravating and mitigating factors, as well as the sanction the Panel recommended.

# III.

"The sole authority to discipline attorneys and decide appropriate sanctions rests with this Court." *In re Davidson*, 409 S.C. 321, 327, 762 S.E.2d 556, 559 (2014) (citations omitted). "The Supreme Court may accept, reject, or modify in whole or in part the findings, conclusions and recommendations of the [Panel]." Rule 27(e)(2), RLDE, Rule 413, SCACR. "This Court has never regarded financial misconduct lightly, particularly when such misconduct concerns expenditure of client funds or other improper use of trust funds." *In re Taylor*, 396 S.C. 627, 631, 723 S.E.2d 366, 367 (2012) (citation and quotations omitted). Consistent with Respondent's admission of misconduct in his Answer to the Formal Charges, we find Respondent committed misconduct as set forth above. Thus, the remaining issue before this Court is the appropriate sanction. *See* Rule 7(b), RLDE, Rule 413, SCACR (misconduct shall be grounds for one or more sanctions).

Even though the investigation into Respondent's financial misconduct was complex and time-consuming, ODC's delay in prosecuting this matter is inexcusable. ODC has offered no specific explanation, much less a reasonable one, for the five-and-a-half year delay between the authorization and the filing of Formal Charges. However, the question remains to what extent, if any, this unjustified delay mitigates the gravity of Respondent's financial misconduct. The parties have not cited, and our research has not revealed, any South Carolina case on point.

Other jurisdictions handle delay in disciplinary prosecution in varying ways. Some treat it as a mitigating factor to be considered like any other, even in the absence of a showing of prejudice to the respondent, and others consider delay only if it results in prejudice or *unfair* prejudice to the respondent. *See, e.g.*, *In re Howes*, 52 A.3d 1, 18 n.22 (D.C. Ct. App. 2012) (observing a twelve-year delay between the misconduct and the disciplinary hearing did not demonstrate the requisite prejudice to warrant mitigation of sanction); *Hayes v. Alabama State Bar*, 719 So.2d 787, 790–91 (Ala. 1998) (finding the bar's unexplained "inordinate delay" in pursuing charges warranted dismissal of the charges); *In re Peasley*, 90 P.3d 764, 777–78 nn.20-21 (Ariz. 2004) (finding a three-year delay from the filing of the initial complaint until a formal complaint was filed to be a mitigating factor but finding the remaining four-year delay was attributable to the complexity of the case and the Respondent's own litigation tactics and therefore was not a mitigating factor); *People v. Albani*, 276 P.3d 64, 76 (Colo. 2011) (finding a five-year delay in disciplinary proceedings that impacted witnesses' ability to recall underlying events and statements resulted in prejudice, but not unfair prejudice, and therefore

concluding delay "will not be weighed heavily"); *In re LiBassi*, 867 N.E.2d 332, 336 (Mass. 2007) (finding "delay in the prosecution of attorney misconduct does not constitute a mitigating factor absent proof that the delay has substantially prejudiced the defense, or evidence of the resulting public opprobrium." (citation and quotations omitted)); *In re Preszler*, 232 P.3d 1118, 1133 (Wash. 2010) (explaining "[d]elay is a mitigating circumstance when the respondent attorney is able to establish that the proceeding's time span resulted in unfair prejudice to him or her, or is caused by unjustified prosecutorial delay").

We find unjustified delay on the part of ODC may properly be considered as a mitigating factor where a Respondent demonstrates unfair prejudice as a result thereof. However, we find Respondent did not suffer any prejudice under the facts of this case. To the contrary, during the pendency of these proceedings, Respondent benefitted by continuing to practice law and practicing without the concomitant responsibility of overseeing his trust account, as this Court had reassigned that task to his associate. Further, it does not appear Respondent suffered any public opprobrium or detriment to his practice, as Respondent repeatedly noted that more than $21.5 million passed through his trust account since 2013.

To be clear, we do not condone, in any respect, the inordinate delay caused by ODC in this case. However, we cannot ignore Respondent's longstanding pattern of using money that was not his from his trust account, and we conclude this misconduct warrants disbarment. *See In re Beck*, 412 S.C. 585, 587, 773 S.E.2d 576, 577 (2015) (disbarring an attorney who, for approximately eleven years, used funds from his trust account for purposes for which those funds were not intended "including funding other clients' litigation, cash advances to clients, office operating expenses, payroll, and personal expenses"). Accordingly, we reject the Panel's recommendation and disbar Respondent from the practice of law in this state. Within fifteen (15) days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing he has complied with Rule 30, RLDE, Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court. Within thirty (30) days of the date of this opinion, Respondent shall pay or enter into a payment plan with the Commission on Lawyer Conduct to pay the costs of these disciplinary proceedings, which total $13,141.66.

**DISBARRED.**


**KITTREDGE and JAMES, JJ., concur. FEW, J., concurring in a separate opinion. HEARN, J., dissenting in a separate opinion.**

**JUSTICE FEW:** I concur in the majority's decision to disbar Mr. Wern. However, there are two important aspects of this case as to which my perspective differs from that of the majority. First, in my opinion, this case has absolutely nothing to do with Rule 417, SCACR. Mr. Wern intentionally took his clients' money out of his trust account, and he knew doing so was stealing. He directed the withdrawals from the account with full knowledge of the crimes he was committing, and at other times he delayed legitimate withdrawals to cover up his crimes. The fact he accomplished the crimes by directing an employee to do the necessary acts does not implicate Rule 417. The record-keeping requirements of Rule 417 were designed to protect a law-abiding attorney and her clients from having trust funds stolen by a third party, or if funds are lost or stolen, to ensure early detection. When the attorney is the person doing the stealing, no record-keeping rule is going to stop him. Mr. Wern's attempt to hide his thefts behind Rule 417 is disingenuous.

Second, I have a different perspective on ODC's delay in bringing formal charges against Mr. Wern. Initially, I agree with the majority's characterization of the delay as "inexcusable." However, ODC is an agency of this Court. ODC is set up under Rule 413 of the South Carolina Appellate Court Rules, which we wrote. If ODC engaged in inexcusable delay—and the entire Court agrees it has—then the responsibility for the failure falls ultimately to this Court. *See* Rule 5(a), RLDE, Rule 413, SCACR ("The Supreme Court shall appoint a member of the South Carolina Bar who has been admitted under Rule 402, SCACR, as the disciplinary counsel."). It is simply not enough for this Court to say "we do not condone . . . the inordinate delay caused by ODC in this case." To say merely this is to blame the current disciplinary counsel for *our* failure,[3] and effectively to "condone" our own lack of supervision over the professionals we employ. The delay is ours, and we must take the necessary steps—through rulemaking, staffing, and other means—to improve the operations of ODC to prevent this delay from ever happening again.

---

[3] The current disciplinary counsel is relatively new to the job, and if anything, is the person responsible for getting this case and others in the backlog of the office moving toward resolution.

**JUSTICE HEARN:** I respectfully dissent as to the decision to disbar Respondent because I believe that sanction is excessive, particularly in light of Respondent's lengthy, unblemished disciplinary history as well as the prejudice he sustained due to the delay by the Office of Disciplinary Counsel (ODC) in resolving this matter. Accordingly, I would impose a one-year suspension.

Respondent cannot be excused for his extreme carelessness and inattention to his responsibilities with respect to his trust account, and I do not excuse him. However, as soon as he became aware of the gravity of his ethical infractions, Respondent took immediate steps to rectify the situation and replenish the funds in his trust account. Shortly thereafter, he also hired an associate who was responsible for ensuring his trust account was in full compliance with the disciplinary rules from that point forward, a period of nearly six years. While I certainly appreciate that his clients were harmed in the sense that their monies were being used for Respondent's personal and office expenses, there is no evidence in this record that any client was actually harmed or ever complained about Respondent's conduct. Moreover, the inexplicable delay by ODC in resolving the complaint against Respondent most assuredly prejudiced him. Therefore, in my view, the extreme sanction of disbarment is not warranted, and I believe our prior jurisprudence bears this out. *See In re Murph*, 350 S.C. 1, 5, 564 S.E.2d 673, 675 (2002) (describing disbarment as a "severe sanction"). For example, we issued a two-year suspension for an attorney who mismanaged his trust account, delegated responsibilities to his spouse/bookkeeper whom he failed to adequately train, had negative client ledger balances, attempted to restore the trust account with personal funds and earned fees, and hired an accountant to reconcile his records. *In re Swanner*, 408 S.C. 191, 192-94, 758 S.E.2d 711, 712-13 (2014). Swanner also improperly issued loans to clients and failed to diligently pursue the appeal of a decision denying his client's claim, and he had received two prior admonitions and a letter of caution. *Id*. at 195-97 n.1, 758 S.E.2d at 713-14 n.1. Despite these facts, which are similar to those presented here but also included cognizable harm to clients and an extensive prior disciplinary history, this Court did not disbar.

Conversely, we have found disbarment warranted when clients sustained concrete harm as a result of more egregious conduct, accompanied by serious prior disciplinary infractions. In *In re Johnson*, this Court disbarred an attorney who not only misappropriated client funds and failed to maintain his trust and escrow accounts, but also neglected client matters, pled guilty to assault and battery and willful tax avoidance, failed to pay an expert witness and a court reporter, and previously received a private reprimand, a public reprimand, and an interim suspension. 385 S.C. 501, 504-05, 685 S.E.2d 610, 611 (2009). Mr. Wern's conduct

here in no way approaches the delicts committed by Johnson, nor does he have any prior disciplinary history, yet the majority votes to disbar.  More recently, in *In re Beck*, we disbarred an attorney who violated approximately five ethical rules including the misappropriation of client funds for over eleven years and had a prior disciplinary history wherein he had received a letter of caution but yet admittedly continued to violate the same rule.  412 S.C. 585, 588-89, 773 S.E.2d 576, 578 (2015).  *See also In re Warren*, 416 S.C. 613, 614-15, 787 S.E.2d 528, 529 (2016) (disbarring an attorney who, among other things, stole money from a trust for which he served as trustee and accepted over $40,000 in fees but did not complete work as promised or reimburse fees for the incomplete work);  *In re Pennington*, 393 S.C. 300, 301-02, 713 S.E.2d 261, 261-62 (2011) (concluding disbarment was warranted where an attorney, in addition to other violations, accepted fees for representing clients but did no work on the clients' matters, contributed to a client going to jail after the attorney failed to make payments for the client who had entrusted the attorney to pay the checks at issue in the client's pending fraudulent check charges, and did not pay a client's medical providers and insurers out of the client's settlement funds).  I find it significant that in all these cited cases, clients sustained concrete injury because of the attorney's misconduct.  Here, however, the complaint was lodged by an associate who left Mr. Wern's employ and *no client ever complained*. Most importantly, I believe it should matter that Respondent practiced law for thirty-three years without any complaint against him.  In my view, Respondent's grievance-free disciplinary history for over three decades is a factor which should strongly mitigate against disbarment.

Finally, I am admittedly troubled by ODC's lengthy delay in prosecuting this matter.  Respondent was in his mid-sixties when the allegations of misconduct initially arose.  Even accepting the Panel's assumption that Respondent would have been disbarred at that time, the prejudice to him resulting from ODC's delay is readily apparent—the passage of time has now rendered the possibility of Respondent obtaining other employment extremely unlikely.

Accordingly, I would suspend Respondent for one year.