**Curtis J. HAMILTON III, Appellant,**

v.

**KENTUCKY BAR ASSOCIATION, Appellee.**

No. 2004–SC–000105–KB.

Supreme Court of Kentucky.

Dec. 22, 2005.

Curtis James Hamilton III, Henderson, Counsel for Appellant.

Bruce K. Davis, Executive Director, Linda Gosnell, Chief Bar Counsel, Kentucky Bar Association, Frankfort, Counsel for Appellee.

## OPINION AND ORDER

LAMBERT, Chief Justice.

The Kentucky Bar Association (KBA) recommends that this Court enter an Order finding Curtis J. Hamilton III guilty of violating SCR 3.130–1.15(b) and (c).

Hamilton, KBA number 87172, was admitted to practice law in Kentucky on May 1, 1998. Hamilton was also admitted to practice in Ohio in 1995. In September 1997, he became employed as an associate in the law firm of Neel Wilson & Clem (NWC) in Henderson, Kentucky. While working as an associate for NWC he entered into a contract of employment with James and Margaret Gardner on behalf of the firm for professional legal services. Per the employment contract, NWC was to represent the Gardners and their children with regard to personal injury claims arising from an automobile accident on August 12, 1997.

While the Gardner case was pending, the partners of NWC met with Hamilton on several occasions regarding his overall professional performance. A memorandum, dated April 13, 2000, outlined certain remedial actions for Hamilton to take. Subsequent thereto, the partners of NWC met with Hamilton and encouraged him to find employment elsewhere. He thereafter tendered a letter of resignation to NWC dated July 14, 2000. The letter advised the partners that he had accepted a position with the law firm of Morton & Bach. Hamilton also advised the partners that he intended to contact clients he was serving at NWC to determine if they wished to stay with NWC or continue with him at his new law firm. In Hamilton's letter of resignation to NWC he wrote the following:

> With respect to contingency fee clients, I will advise each of them of the nature of the equitable *quantum meruit* lien your firm has for any services I have provided while an associate with Neel Wilson & Clem, and that any expenses advanced by Neel Wilson & Clem will be paid by me to the firm pursuant to their contract with the firm.

(italics in original). On July 18, 2000, Hamilton wrote the Gardners requesting that they sign a release to permit their file to be transferred to him. Mr. Gardner signed the release, which stated in pertinent part that he was "responsible for any fees and expenses incurred in my case as performed by the attorneys of your firm [NWC]." Thereafter, on August 23, 2000, Hamilton entered into a contract to provide legal services to the Gardners on behalf of Morton & Bach.

Previously, on July 28, 2000, Hamilton wrote a letter to W.C. Wilson, III, a partner of NWC, giving Mr. Wilson an update on certain matters and stating the following regarding contingency fee cases which Hamilton took with him:

> With respect to the contingency fee cases, I have explained to each such client that you will be paid a portion of my overall attorney's fee to satisfy your lien against any settlement or judgment. I will pay you out of my trust account any sums due and owing, and will send you an appropriate release of the lien. I will then forward the release to my clients with their portion of the settlement.

On October 31, 2000, Charles Edward Clem, a partner of NWC, wrote a letter to

Hamilton regarding the status of several contingency fee cases that he was handling. The Gardner case was one such case. Hamilton did not promptly respond to Mr. Clem's inquiries regarding the contingency fee cases. On April 10, 2001, Hamilton wrote Mr. Clem and provided updates regarding accounts which were delinquent and specifically stated, "when I left, I did advise all of my clients that they owed you for all services incurred while I was an associate at Neel Wilson & Clem." However, Hamilton did not advise Mr. Clem that he had settled the Gardner's case several weeks earlier and that he had deposited all of the attorney's fees and expenses from the settlement into his new law firm's general account.

On March 9, 2001, prior to writing Mr. Clem, Hamilton filed a petition for the appointment of a guardian for one of the minor children in the Gardner case for the purpose of seeking approval of the settlement. Hamilton did not notify NWC that the matter was about to settle or that a hearing in this regard was going to take place. Petitions for approval of the settlement filed by Hamilton requested that the entire amount of attorney's fees be approved and paid to Hamilton's new law firm, despite his knowledge and acknowledgement of NWC's claim. Hamilton did not advise the court of NWC's claim, and based on his representations, the Indiana trial court entered a Guardianship Order and an Order approving settlement on March 14, 2001. He also failed to notify his opposing counsel that his former law firm had a claim against the settlement proceeds in the Gardner case. On April 2, 2001, the Indiana court dismissed the Gardner case, with prejudice.

On March 12, 2001, checks in the amount of $45,000 and $2,500 were delivered to Hamilton by the defendants in the Gardner case in accordance with the Set-tlement Agreement. These checks were deposited in the escrow account controlled by Morton & Bach and on March 28, 2001, Hamilton caused a check in the amount of $13,865.14 to be written from the escrow account to the firm's general fund for payment of attorney's fees relating to the Gardner's settlement. Thereafter, Hamilton wrote a letter to the Gardners and enclosed a Settlement Accounting and Release along with checks. Among other things, the Settlement Accounting and Release disclosed to the Gardners that of the $1,390.94 in expenses which were advanced $607.81 represented expenses incurred at NWC. The $607.81 collected from the Gardners was ostensibly for the purpose of paying expenses advanced by NWC, but Hamilton never paid NWC, nor were the Gardners informed that the money they had paid towards NWC's expenses was not properly applied. The Settlement Accounting and Release also provided in part as follows:

> Clients and Attorney understand that Attorney's former firm, Neel Wilson & Clem, may have a claim against the attorney's fees collected, and that any claim of Neel Wilson & Clem will be paid by Morton and Bach to that law firm from the Attorney's Fees and Expenses collected above. However, at this time Neel Wilson & Clem has not provided Clients, Attorney, opposing counsel, the Court, or Indiana Insurance of any claim it may have. Clients agree to notify Attorney of any such claim asserted by Neel Wilson & Clem immediately upon receipt thereof.

This provision was inserted in the Settlement Accounting and Release despite the fact that Hamilton had written letters acknowledging NWC's claim, the original contract signed by the Gardners acknowledged NWC's claim and the authorization

and release signed by Mr. Gardner acknowledged NWC's claim.

Hamilton has asserted that the above language was in the Settlement Accounting and Release because he believed that Indiana law would apply to the matter and according to his understanding of Indiana law, a claimant was required to file a lien in the court record within sixty (60) days of the final judgment. However, despite such Indiana law, Hamilton dispersed all of the settlement funds prior to the expiration of the statutory sixty (60) days. After settling the Gardner case, Hamilton paid no portion of the attorney's fees or expenses to NWC. Hamilton did not advise NWC of the settlement and did not provide NWC with a copy of the settlement statement. Although the record is somewhat unclear, apparently one of NWC's partners learned of the settlement in May 2001 during a conversation with someone in the local courthouse. Thereafter, one of NWC's partners contacted Hamilton to inquire about the settlement and Hamilton told him that NWC was not entitled to anything he earned in the Gardner Case.

On September 27, 2002, the Inquiry Commission charged Hamilton with violating SCR 3.130–1.15(b) and (c) by failing to promptly notify a third party claimant (NWC) of the receipt of settlement proceeds in which the third party had an interest; failing to promptly deliver to that third party funds that it was entitled to receive; and failing to keep the funds in a separate bank account. He was also charged with violating SCR 3.130–8.3(c) by being deceitful in failing to notify the trial court of the presence of another claim in his motion to have fees approved by the court; by failing to fully advise the client of the import of that claim; and by failing to notify his former law firm of the pendency of the settlement, the motion for trial court approval, the disposal of monies or the availability of funds to be paid on any fee claims it had.

An evidentiary hearing before the Trial Commissioner, Honorable Mark S. Medlin, was held on August 26, 2004. Hamilton and the KBA presented witness testimony and introduced documentary evidence. On January 28, 2005, the Trial Commissioner filed his Post–Trial Opinion and Recommendation. Thereafter, the Trial Commissioner filed an Amended Report on March 17, 2005. The Trial Commissioner found that Respondent violated SCR 3.130–1.15(b) and SCR 3.130–1.15(c). He also found that the KBA did not meet its burden of proof in connection with the charge under SCR 3.130–8.3(c). The Trial Commissioner recommended that Hamilton be suspended from the practice of law for a period not to exceed thirty (30) days and further recommended that Hamilton be required to attend, in addition to continuing legal education requirements, not less than eight (8) hours of remedial courses in professional responsibility as approved by the Office of Bar Counsel, including at least four (4) hours dealing with the proper handling and administration of funds in Hamilton's trust accounts.

Hamilton appealed his case to the Board of Governors (Board). Hamilton filed a brief with the Board and appeared pro se. He admitted in his brief to the Board that his conduct was a violation of SCR 3.130–1.15(b) and (c).

SCR 3.130–1.15(b) provides:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon

request by the client or third person, shall promptly render a full accounting regarding such property.

SCR 3.130–1.15(c) provides:

When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

In his brief to the board, Hamilton admitted that he committed the violation and appealed to the board for leniency in the recommended sanction. We accept the recommendation of the KBA regarding Hamilton's discipline.

Therefore it is ORDERED that:

1. Curtis J. Hamilton III is hereby found guilty of the charge in KBA File Number 8609, for the count setting forth his violation of SCR 3.130–1.15(b) and (c).

2. He is hereby publicly reprimanded, and notice and publication of this Order is granted for the benefit of all members of the bar and public.

3. He shall complete eight (8) hours of remedial courses in professional responsibility as approved by the Office of Bar Counsel, including at least four (4) hours dealing with the proper handling and administration of funds in his trust accounts.

4. He shall pay all costs associated with this action as provided by SCR 3.450 in the amount of $3,391.48 for which execution may issue from this Court upon finality of this order.

This Court further finds that Hamilton is not guilty of the count of the charge for his alleged violation of SCR 3.130–8.3(c).

All concur except WINTERSHEIMER, J., who would grant review.