809 S.E.2d 409

In the MATTER OF William Ashley JORDAN, Respondent.

**Appellate Case No. 2012-212593**
**Opinion No. 27734**

Supreme Court of South Carolina.

Heard March 2, 2016
Filed August 30, 2017
Rehearing Denied February 15, 2018

596

Lesley M. Coggiola, Disciplinary Counsel, and Barbara Marie Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

A. Camden Lewis and Ariail Elizabeth King, both of Lewis Babcock L.L.P., of Columbia, for Respondent.

PER CURIAM:

This attorney disciplinary matter arises out of two separate sets of formal charges filed by the Office of Disciplinary Counsel against William Ashley Jordan. Disciplinary Counsel filed the first set of formal charges with the Commission on Lawyer Conduct on January 7, 2011. The first charges allege primarily that Mr. Jordan did not properly manage funds owed to clients or co-counsel or keep adequate records of those funds between 1999 and 2005. As to those charges, a hearing panel of the Commission recommended to this Court that Mr. Jordan receive a public reprimand, and Mr. Jordan agrees a public reprimand is an appropriate sanction.

In October 2012, while the panel's recommendation for the first set of charges was pending before this Court, Disciplinary Counsel received a new complaint alleging Mr. Jordan committed more serious misconduct between 2009 and 2012. The crux of the new complaint was—in seven different cases—Mr. Jordan entered into a fee-sharing arrangement with another attorney, did not disclose the arrangement to the client, collected a fee for the case, and deposited the entire fee in his law firm's accounts instead of paying co-counsel's share of the fee. After considering the second set of charges, the panel recommended to this Court that Mr. Jordan be disbarred.

Disciplinary Counsel requested we stay our decision on the first set of charges pending an investigation of the second set. Because we granted the stay, we have not previously addressed the first set of charges. Therefore, although the sanction we ultimately impose is based on the misconduct in the second set of charges, we have necessarily included in this opinion the details of the misconduct in the first set of charges.

## I. Facts and Procedural History

Disciplinary Counsel filed the first set of formal charges on January 7, 2011. On March 1, 2011, Mr. Jordan filed his response to the charges, and on March 17, 2011, he filed a corrected response. On December 5, 2011, Mr. Jordan ap-

peared before the hearing panel for a full evidentiary hearing on the first set of charges.[1] On July 12, 2012, the hearing panel issued its report recommending a public reprimand based on the following misconduct.

In the Client A case, the panel found Mr. Jordan paid himself more attorney's fees than he was entitled to receive pursuant to his fee-sharing arrangement with two attorneys, improperly negotiated a check for attorney's fees from his trust account to his firm account before the funds had been collected by his bank, failed to pay his co-counsel's shares of the fee from a settlement installment for approximately two years, and—after finally paying his co-counsel—disbursed $49,333.32 more from his trust account than he received on behalf of the client. The panel found this conduct violated Rule 1.15, RPC, Rule 407, SCACR, and Rule 417, SCACR. The panel also found Mr. Jordan failed to supervise a nonlawyer assistant in violation of Rule 5.3, RPC, Rule 407, SCACR. Although Disciplinary Counsel charged Mr. Jordan with violating Rule 8.4(d), RPC, Rule 407, SCACR, the panel found Mr. Jordan did not engage in dishonest or fraudulent conduct.

In the Client B case, the panel found Mr. Jordan—while holding funds in trust for a deceased client—failed to ensure his associate opened an estate for the disbursement of the funds. Mr. Jordan transferred the funds through several trust accounts over the course of four years but could not produce an accounting of the transfers. Mr. Jordan's bookkeeper "mistakenly transferred" some of the client's funds to cover a shortage of funds held in trust for another client, and Mr. Jordan could not account for the remaining funds at the time his law firm dissolved. After improperly holding the funds for over six years, Mr. Jordan restored the funds to his trust account and paid the funds to the Lawyers' Fund for Client Protection. The panel found Mr. Jordan violated Rules 1.1, 1.3, 1.15, and 5.1, RPC, Rule 407, SCACR, and Rule 417, SCACR. The panel also found Mr. Jordan failed to properly supervise his bookkeeper in violation of Rule 5.3, RPC.

In the Client C case, the panel found Mr. Jordan paid himself more attorney's fees than he was entitled to receive

---

1. These dates are important in our consideration of the second set of charges.

pursuant to his fee-sharing arrangement with co-counsel, transferred funds held in trust for his client but failed to account for $382.21 of those funds, and disbursed more funds to the client than he deposited in the trust account. Mr. Jordan's bookkeeper covered the overpayment using another client's funds. The panel found Mr. Jordan violated Rules 1.1 and 1.15, RPC, and Rule 417, SCACR.

In the Client D case, the panel found Mr. Jordan and his co-counsel agreed to reduce their fee from forty percent to approximately thirty-six percent for settling the case. After receiving the settlement money, Mr. Jordan issued a check for the full attorney's fee to his firm, despite his agreement to split the fees evenly with co-counsel. Mr. Jordan later over-paid his co-counsel by paying her half of a forty-percent fee, rather than the agreed-upon thirty-six percent fee. Mr. Jordan transferred funds from Client E's account ledger in his trust account to make up for the overpayment. The panel found Mr. Jordan violated Rules 1.3 and 1.15, RPC, and Rule 417, SCACR. The panel also found Mr. Jordan failed to properly supervise a nonlawyer assistant in violation of Rule 5.3, RPC.

In the Client E case, the panel found Mr. Jordan agreed to share fees equally with his co-counsel. After settling the case, Mr. Jordan deposited his half of the $18,000 attorney's fee in his trust account and used the money to cover his overpay-ment in the Client D case. Mr. Jordan then paid co-counsel's share of the fee to himself because he believed co-counsel owed him money in another case. He subsequently paid him-self a one-half share of the fee a third time—which resulted in Mr. Jordan receiving 150% of the total attorney's fee—but he could not identify the source of the funds. The panel found Mr. Jordan violated Rule 1.15, RPC, and Rule 417, SCACR.

In the Client F case, the panel found Mr. Jordan settled claims on behalf of two clients for $15,000 each and deposited the settlement funds in his law firm's trust account. After making several disbursements, Mr. Jordan held $7,800 in trust for the clients to pay medical expenses or liens. Mr. Jordan transferred the funds through several trust accounts but failed to accurately record the transfers. Five years later, during Disciplinary Counsel's investigation, Mr. Jordan discovered he owed no liens or bills on behalf of the clients. However, Mr.

Jordan could no longer account for the funds in his trust account and paid the clients from his personal funds. The panel found Mr. Jordan violated Rules 1.3 and 1.15, RPC, and Rule 417, SCACR.

In the Client G case, the panel found Mr. Jordan received $31,000 on behalf of his client and deposited the funds into his trust account pending the outcome of the client's case. Less than two weeks later—while the case was still pending—Mr. Jordan wrote the client a trust account check for $31,000, received a loan from the client for the same amount, deposited the funds into a personal account, and wrote a check for $22,000 of the funds to his law firm's operating account. Eight months later, Mr. Jordan repaid his client without paying interest. Mr. Jordan did not reduce the terms of the loan to writing, did not advise the client to seek advice from independent counsel, accepted the loan without disclosing his conflict of interest, and did not obtain the client's consent to the conflict. The panel found Mr. Jordan's "acceptance of a loan from funds obtained on behalf of a client in a legal matter without payment of interest, terms of repayment, written note or other guaranty of repayment, or contingency for failure to pay was not fair or reasonable to the client." Therefore, the panel found Mr. Jordan violated Rule 1.8(a), RPC, Rule 407, SCACR.

In the Client H case, the panel found Mr. Jordan received $55,200 in funds to be held in trust on a client's behalf and—at her instruction—disbursed the funds to pay the client's obligations. Mr. Jordan's records identified $51,755.28 disbursed on the client's behalf. In March 2003, Mr. Jordan issued a check for $6,105.10 to a mortgage company. According to the panel, Mr. Jordan's records "do not identify the purpose of this check or the client on whose behalf it was paid," but Mr. Jordan believes he wrote the check on behalf of Client H. Therefore, Mr. Jordan paid on Client H's behalf $2,660.38 more than he received. The panel found Mr. Jordan violated Rule 1.15, RPC, and Rule 417, SCACR.

In the Client I case, the panel found that in May 2003, Mr. Jordan deposited settlement funds into a client trust account and improperly used the funds to pay attorney's fees and costs to his law firm before his bank collected the funds, in violation

of Rule 1.15(f), RPC. Between May 2003 and February 2004, Mr. Jordan made a series of payments to the client while he negotiated a lien held by a workers' compensation carrier. In July 2005—before Mr. Jordan settled the lien—he dissolved his law firm without an accurate accounting of the funds held in trust for the client and claims he left the funds in a trust account under the control of his former partner. Mr. Jordan ultimately paid the client with his personal funds after learning from the former partner's bookkeeper "that no funds remained in trust for his clients." The panel found Mr. Jordan violated Rule 1.15, RPC, and Rule 417, SCACR. The panel also found Mr. Jordan failed to supervise a nonlawyer assistant in violation of Rule 5.3, RPC.

In the Client J case, the panel found Mr. Jordan collected a class action settlement in three installments. When he transferred the first settlement installment from one trust account into a second trust account, he failed to account for $10,000 of the settlement funds. He also erroneously paid himself an additional $10,000 for partial reimbursement of costs. Six years after receiving the final settlement installment, approximately $12,000 of the settlement remained unclaimed, but Mr. Jordan could not locate the funds. The panel found Mr. Jordan violated Rules 1.1, 1.3, 1.5, and 1.15, RPC, Rule 407, SCACR, and Rule 417, SCACR. The panel also found Mr. Jordan failed to supervise a nonlawyer assistant in violation of Rule 5.3, RPC.

In the Client K case, the panel found Mr. Jordan transferred approximately $42,000 held in trust for a client through several trust accounts. Mr. Jordan then dissolved his law firm without an accurate accounting of the Client K funds remaining in the firm's trust account. When he requested the trust balance from his former partner's bookkeeper, he "was informed by [the] bookkeeper that there were no funds remaining in the [Client K] matter." He paid the client using earned fees from another client's case and funds from a check he received from an associate. The panel found Mr. Jordan violated Rule 1.15, RPC, and Rule 417, SCACR.

In the Client L case, the panel found Mr. Jordan disbursed settlement funds to and on behalf of the client, including a $2,600 check to pay a doctor bill. According to the panel

report, the payee never negotiated the check, and Mr. Jordan did not discover the outstanding check until approximately four years after the settlement "when his accountant identified it as unpaid." However, he was unable to locate the funds in his trust accounts. The panel found Mr. Jordan violated Rules 1.3 and 1.15, RPC, and Rule 417, SCACR. The panel also found Mr. Jordan failed to supervise a nonlawyer assistant in violation of Rule 5.3, RPC.

In the Client M case, the panel found Mr. Jordan—after paying fees and expenses—consolidated into a single trust account funds held in trust for the estate of his client. In doing so, he included almost $18,000 more in the account than he actually held in trust for the estate. After disbursing the correct amount of funds to the estate, he could not identify who was entitled to the additional $18,000 remaining in the trust account. Although Mr. Jordan denied committing any misconduct in this case, the panel found clear and convincing evidence that Mr. Jordan violated Rule 1.15, RPC, and Rule 417, SCACR.

In the Client N case, the panel found Mr. Jordan deposited a settlement check into a trust account, improperly disbursed the settlement funds before his bank collected the check, and paid himself the full fee and reimbursement of his expenses despite his agreement to share the fee equally with co-counsel. Mr. Jordan paid his co-counsel six months later after co-counsel brought the issue to his attention. The panel found Mr. Jordan violated Rule 1.15, RPC.

In the Client O case, the panel found Mr. Jordan improperly disbursed settlement funds to himself before his bank collected the funds, paid himself fees on portions of a settlement he had not yet collected, did not maintain separate client ledgers for two clients, and treated the clients' settlements as one fund from which he could collect his fees. The panel found Mr. Jordan violated Rule 1.15, RPC, and Rule 417, SCACR.

As to the first set of formal charges, Mr. Jordan contested the allegation that he violated Rule 8.4(d), RPC, an allegation that he violated Rule 8.4(e), RPC, Rule 407, SCACR, one of the allegations that he violated Rule 1.15, RPC, and one of the allegations that he violated Rule 417, SCACR. He admitted the remaining violations. The panel made a factual finding that

Mr. Jordan did not act with a dishonest or selfish motive in violation of Rule 8.4(d), RPC. The panel explained "no evidence was offered by [Disciplinary Counsel] that would establish or suggest that [Mr. Jordan] was dishonest in handling [his] trust account at any time" and stated, "While there was a pattern of accounting errors made by [Mr. Jordan], none amounted to dishonest or fraudulent conduct." However, the panel found by clear and convincing evidence Mr. Jordan violated Rule 1.15, RPC, and Rule 417, SCACR, in the case in which he denied violating those rules. The panel did not address the allegation that Mr. Jordan violated Rule 8.4(e), RPC.

In its report, the panel considered several mitigating factors, including Mr. Jordan's chemical dependency. According to a physician who testified at the December 5, 2011 hearing, Mr. Jordan was addicted to prescription drugs from 1997 to 2004, and his addiction caused memory loss and other serious side effects. Mr. Jordan blamed the addiction for causing his failure to account for client funds and keep accurate records. The panel considered several other mitigating factors, including Mr. Jordan's personal and emotional problems, his cooperation in disciplinary proceedings, his timely good faith effort to make restitution or rectify the consequences of his misconduct, and the remoteness in time of his offenses. The panel also considered several aggravating factors—including multiple disciplinary offenses, a pattern of misconduct, and prior offenses [2]—and recommended Mr. Jordan be publicly reprimanded.

On October 9, 2012—while the panel's initial recommendation was pending before this Court—Disciplinary Counsel received a complaint from an attorney who referred several

2. Mr. Jordan has received two letters of caution for misconduct in other situations. In 2001, he received a letter of caution for misplacing client records in violation of Rules 1.3 and 1.15, RPC. In 2007, he received a letter of caution for refusing to pay for mediation services. The panel considered "the fact that [Mr. Jordan] has been cautioned before for concerns about Rule 1.15" as an aggravating factor in its panel report as to the first set of charges. See Rule 2(r), RLDE, Rule 413, SCACR ("The fact that a letter of caution has been issued shall not be considered in a subsequent disciplinary proceeding against the lawyer unless the caution or warning contained in the letter of caution is relevant to the misconduct alleged in the proceedings.").

cases to Mr. Jordan between 2009 and 2012. This Court stayed the first set of charges pending an investigation into the new complaint. On May 8, 2015, Disciplinary Counsel informed the Commission the parties agreed to waive the filing of the second set of charges and submit stipulations of fact and proposed amended panel reports without an evidentiary hearing. On June 3, 2015, the Commission accepted the waiver of a hearing but directed Disciplinary Counsel to file formal charges, and on June 4, 2015, Disciplinary Counsel filed a second set of formal charges. On September 8, 2015, the panel issued an addendum to its original report, in which it found the stipulated facts constituted an admission by Mr. Jordan of misconduct in seven cases.

In each of the seven cases, the attorney referred a client to Mr. Jordan, the two attorneys agreed to evenly split Mr. Jordan's fee from the client's claim, Mr. Jordan did not inform the client of the fee-sharing arrangement or obtain the client's consent to the arrangement, and in at least six of the cases, Mr. Jordan did not promptly pay his co-counsel's share of the fee. The hearing panel did not address the propriety of Mr. Jordan's agreement to evenly split the fee Mr. Jordan earned from each of the cases, other than noting its general finding that the

> division of the fee was not based on the proportion of the work done by each lawyer, but rather based on an understanding that both lawyers would be accountable for the representation and that [the referring attorney] ... and his staff would be generally available to [Mr. Jordan] if he required assistance.

To place the second set of charges in context, it is important to note the timing of Mr. Jordan's misconduct in relation to the proceedings for the first set of charges. Disciplinary Counsel filed the first set of charges on January 7, 2011, and Mr. Jordan filed his responses to those charges in March 2011. Mr. Jordan appeared at a full hearing on the first set of charges on December 5, 2011. We describe each of the cases in the second set of charges below.

In the Client P case, Mr. Jordan entered into a forty-percent fee agreement with a client on May 5, 2009, and agreed to pay the referring attorney half the fee. In Septem-

ber 2010, Mr. Jordan settled the claim for $100,000 and presented to the client a settlement disbursement statement showing $40,000 in fees and $5,792.43 in costs payable to Mr. Jordan. The second set of charges and stipulations of fact stated Mr. Jordan claimed he paid the referring attorney's share of the fee, but he could not produce any document or record to support his assertion and failed to maintain records of the settlement check, deposit of settlement funds, or canceled disbursement checks. However, in an August 2015 filing, Mr. Jordan submitted documents to the panel showing he paid the referring attorney's fee and reimbursement of costs in January 2011—four months after the payment was due and contemporaneous with the filing of the first set of formal charges.

In the Client Q case, Mr. Jordan settled a case in the fall of 2010 for $52,500. He issued the client a settlement disbursement statement showing $21,000 in fees and $3,852.24 in costs payable to Mr. Jordan and $758 in costs payable to the referring attorney. The addendum and stipulations of fact stated Mr. Jordan claimed he paid the referring attorney's share of the fee but could not produce documents proving his assertion. The record shows Mr. Jordan did not pay the referring attorney's share of the fee until March 2011.

In the Client R case, Mr. Jordan settled the client's case in January 2011 but did not hold the referring attorney's share of the fee separately. Mr. Jordan also did not promptly deliver the share to the attorney or notify him of the settlement. Instead, according to the addendum, he "deposited two trust account checks into his operating account" for the entire amount of the fee and costs. In June 2011, the referring attorney sent Mr. Jordan a list of referred cases and asked Mr. Jordan about the status of the cases. The list incorrectly showed the Client R case as pending, and Mr. Jordan informed the attorney the listed status was correct—despite settling the case several months prior. Approximately a week later, Mr. Jordan sent the attorney a list of referred cases that incorrectly showed the Client R case as "Filed/Litigating." In December 2011, the attorney sent Mr. Jordan another list of cases—which still listed the Client R case as pending—and Mr. Jordan again incorrectly confirmed the Client R case was still pending. Mr. Jordan incorrectly confirmed the case was

still pending a fourth time in January 2012. During a telephone conversation in September 2012, Mr. Jordan again incorrectly informed the referring attorney the case was still pending. After the attorney's assistant checked the court docket and learned the case settled in January 2011, Mr. Jordan "issued operating account checks to [the referring attorney] for one half of the fee and reimbursement of costs." Mr. Jordan "had to deposit funds into his operating account from an equity line of credit" to cover the checks. Mr. Jordan claimed he incorrectly stated the status of the case because he confused it with a similar case. Mr. Jordan also claimed he did not pay the referring attorney his share of the fees and costs because the case did not appear on Mr. Jordan's "master list of cases with associated counsel." However, Mr. Jordan could not produce the alleged master list to Disciplinary Counsel.

In the Client S case, Mr. Jordan settled the case in May 2011 for $80,000. On four occasions—the two June 2011 lists, the December 2011 list, and the January 2012 list described in the Client R case—Mr. Jordan misrepresented to the referring attorney the status of the Client S case as pending or "Filed/Litigating." He paid the referring attorney's share of the fee in September 2012 after the attorney contacted him by telephone and informed him the court's online docket showed the Client S case had been resolved.

In the Client T case, Mr. Jordan settled the case in October 2011 and deposited the settlement check into his trust account. On October 31, 2011, he "deposited trust account checks into his operating account" for the entire fee and costs. Mr. Jordan did not hold the referring attorney's share of the fee in trust and did not inform the attorney he settled the case. On December 27, 2011, when the attorney sent Mr. Jordan the list of cases described in the Client R and Client S cases and asked about their status, Mr. Jordan misrepresented that the Client T case was still pending. Disciplinary Counsel discovered Mr. Jordan's failure to pay the referring attorney's share of the fee during this disciplinary investigation. At the time the panel issued the addendum—September 8, 2015—Mr. Jordan still had not paid the referring attorney's share of the fee because he claimed he "believe[d] that [the attorney] owe[d] him $20,000.00 in connection with" another case.

In the Client U case, the parties stipulated similar events occurred as in the Client T case. On December 14, 2011, Mr. Jordan deposited a settlement check into his trust account, then "deposited trust account checks into his operating account" for the entire fee and costs. He incorrectly confirmed the status of the Client U case on the referring attorney's December 27, 2011 list, which showed the case was pending. In January 2012, Mr. Jordan again misrepresented that the case was pending. At the time of the addendum, Mr. Jordan still had not paid the referring attorney's share of the fee for the same reason he asserted in the Client T case.

In the Client V case, the client suffered a back injury in a workplace accident and retained an attorney to represent him in a workers' compensation claim. After resolving the workers' compensation claim, the attorney referred the client's third-party claim to Mr. Jordan. Mr. Jordan also represented the client's wife on a claim for loss of consortium. The client signed a fee agreement and gave Mr. Jordan power of attorney, but his wife did not. In September 2012, Mr. Jordan settled the case for $500,000 and signed a settlement agreement on behalf of both clients without showing the agreement to either. Because Mr. Jordan did not show them the agreement prior to signing it, the agreement contained a false statement that the clients had read the agreement. On September 13, 2012, Mr. Jordan "deposited the settlement proceeds into his trust account," then improperly "transferred $200,000 from his trust account to his operating account as attorney's fees" before his bank had collected the funds. The referring attorney was entitled to one half of the fee, but Mr. Jordan did not hold his share of the fee in trust and instead deposited the entire $200,000 fee into his law firm's operating account. The clients disputed the amount of the fee calculated by Mr. Jordan and asserted Mr. Jordan had agreed the attorney's fee "would be calculated as forty percent of the net proceeds after repayment of $100,000.00 in subrogation to the workers' compensation carrier." On September 25, 2012, Mr. Jordan transferred $100,000 back into his client trust account. He paid $80,000—the referring attorney's share according to the fee amount asserted by the client—to the referring attorney and added $40,000 to the client's net recovery. Mr. Jordan

"fully disbursed" the settlement proceeds from his trust account on October 26, 2012.

Contrary to its findings regarding the first set of charges, the hearing panel found the stipulated facts in the second set of charges support a finding that Mr. Jordan violated Rule 8.4(d), RPC, by "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation."

The panel reconsidered its findings of aggravating and mitigating factors in its original report. First, the panel explained it no longer considered the remoteness in time of the events as a mitigating factor because Mr. Jordan's "practices of not paying earned fees to co-counsel and not maintaining adequate financial records continued at least from September 2010 ... through September 2012"—after the January 2011 first set of charges and even after the December 2011 hearing. Second, the panel found Mr. Jordan made "false statements" and committed "other deceptive practices during the discipline process," and the panel considered those as aggravating factors. According to the addendum, Mr. Jordan testified at the 2011 hearing that he resolved his accounting issues and made a "significant effort" to operate his law firm in accordance with the Rules of Professional Conduct. However, the panel found Mr. Jordan "was actively engaging in the very same professional misconduct at the time he was answering the first Formal Charges and appearing before this Panel at the disciplinary hearing."

Finally, the panel rejected a "lack of a dishonest or selfish motive" as a mitigating factor. The panel stated, "Because the instances of converting co-counsel's earned fees to his own use continued long after [Mr. Jordan] purportedly addressed his staffing and accounting issues, resolved his family problems, and successfully overcame his debilitating mental disorder and addiction, we can only attribute his ongoing misconduct to selfish and dishonest motives." The panel recommended Mr. Jordan be disbarred.

## II. Analysis

This Court is not bound by the panel's recommendation and may make its own findings of fact and conclusions of law. *In re Davidson*, 409 S.C. 321, 327, 762 S.E.2d 556, 559

(2014). However, "the findings and conclusions of the Panel are entitled much respect and consideration." 409 S.C. at 328, 762 S.E.2d at 559. "A disciplinary violation must be proven by clear and convincing evidence." *In re Samaha*, 399 S.C. 2, 10, 731 S.E.2d 277, 281 (2012) (quoting *In re Greene*, 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006)).

We accept the findings in the hearing panel report as to the first set of charges, Mr. Jordan's stipulation of the facts alleged in the second set of charges, and the findings in the addendum to the hearing panel report as to the second set of charges. Mr. Jordan's stipulations and the panel's findings demonstrate by clear and convincing evidence that Mr. Jordan violated numerous provisions of the Rules of Professional Conduct, including Rules 1.1, 1.3, 1.5(e), 5.1, and 5.3, and the financial recordkeeping requirements and client trust account safeguards of Rule 417, SCACR. We specifically discuss Mr. Jordan's violations of the following additional Rules of Professional Conduct.

## A. Rule 1.5(c), RPC

 Rule 1.5(c) establishes requirements for contingent fee agreements and disbursement of money received in contingent fee cases. The hearing panel found that in six cases from the second set of charges, Mr. Jordan "did not disclose the fee division between [himself] and [the referring attorney] as required by Rule 1.5(c)," and Mr. Jordan admitted the violation. We accept Mr. Jordan's admission that he violated Rule 1.5(c).

## B. Rule 1.5(e), RPC

Rule 1.5(e)(1) states, "A division of a fee between lawyers who are not in the same firm may be made only if … the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation." Rule 1.5(e)(2) allows lawyers to divide a fee only if "the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing." We accept Mr. Jordan's admission that he violated Rule 1.5(e).

### i. Rule 1.5(e)(2)—Written Confirmation

█ Mr. Jordan entered into fee-sharing arrangements in seven cases described in the second set of charges without obtaining his clients' written confirmation of their agreement to the fee division. Therefore, Mr. Jordan violated Rule 1.5(e)(2).

### ii. Rule 1.5(e)(1)—Division of Work or Responsibility

█ The record reflects that as far as Mr. Jordan knew, the referring attorney performed no work on any of the cases. From Mr. Jordan's perspective, therefore, an even division of the fee was not "in proportion to the services performed by each lawyer." The hearing panel found Mr. Jordan split the fee "based on an understanding that both lawyers would be accountable for the representation and that [the referring attorney] and his staff would be generally available to [Mr. Jordan] if he required assistance." Because the hearing panel's finding does not satisfy the requirement that "each lawyer assumes joint responsibility for the representation," we disagree. The comments to Rule 1.5 explain,

> Joint responsibility for the representation entails financial and ethical responsibility for the representation as if the lawyers were associated in a partnership. A lawyer who assumes joint responsibility should be available to both the client and the other fee-sharing lawyer as needed throughout the representation and should remain knowledgeable about the progress of the legal matter.

Rule 1.5, cmt. 7, RPC.

Mr. Jordan did not keep the referring attorney updated on the progress of the cases. If anything, the record indicates Mr. Jordan concealed the progress of the cases from the referring attorney—for as long as twenty months in one case. Mr. Jordan could not have considered the referring attorney to have assumed joint responsibility for the case after he intentionally kept the lawyer unaware for twenty months that their case had settled. When Mr. Jordan then shared the fee with him on an even division, he did so in violation of Rule 1.5(e)(1). *See also In re Hart*, 361 S.C. 392, 395, 605 S.E.2d 532, 534 (2004) ("Respondent acknowledges ... a written agreement with the client in which both attorneys acknowledged full

responsibility for the matter was required."). Therefore, Mr. Jordan violated Rule 1.5(e)(1).

## C. Rule 1.8(a), RPC

Rule 1.8(a)(1) provides,

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

Mr. Jordan admitted he accepted a loan from a client without complying with the requirements of Rule 1.8(a)(1). Mr. Jordan committed three separate violations. First, the transaction was not fair or reasonable to his client because Mr. Jordan did not agree to pay any interest or otherwise promise to compensate his client for the time value of the client's money. While it is also true that Mr. Jordan did not actually pay any interest upon repayment of the principal, the violation was complete at the time he took the loan because his failure to promise to pay interest gave him the benefit of the client's money without any obligation to pay for that benefit. Second, the transaction was not fair or reasonable to his client because Mr. Jordan admitted he "did not provide for any timetable for repayment," and thus, he gave the client no contractual right to demand repayment. Third, Mr. Jordan admitted in his response that he did not transmit the terms of the loan to the client in writing.

As to Rule 1.8(a)(2), Mr. Jordan admitted he did not advise the client to seek the advice of independent counsel prior to making the loan. Mr. Jordan also violated Rule 1.8(a)(3) because he accepted the loan from his client without obtaining her written informed consent to the essential terms of the transaction or to his conflict of interest.

## D. Rule 1.15(a), RPC

Rule 1.15(a) requires lawyers to hold property belonging to other people in trust:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person.

... Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation. A lawyer shall comply with Rule 417, SCACR (Financial Recordkeeping).

■ We accept Mr. Jordan's admission that he violated Rule 1.15(a). First, he failed to hold money belonging to co-counsel separate from his own funds. In these instances, Mr. Jordan paid fees belonging to co-counsel pursuant to fee-sharing agreements into his own account instead of paying the fees directly to co-counsel from his trust account. A lawyer holding funds owed to his co-counsel pursuant to a fee-sharing agreement is subject to the requirements of Rule 1.15 as to those funds. *See Hamilton v. Ky. Bar Ass'n*, 180 S.W.3d 470, 473 (Ky. 2005) (finding a lawyer who took clients from his former law firm and agreed to pay the former firm a portion of any settlement he obtained for those clients violated Kentucky's Rule 1.15—which is similar to our Rule 1.15—"by failing to promptly notify a third party claimant[—his former law firm—]of the receipt of settlement proceeds in which the third party had an interest; failing to promptly deliver to that third party funds that it was entitled to receive; and failing to keep the funds in a separate bank account"); *see also* ANN. MODEL RULES OF PROF'L CONDUCT r. 1.15 annot. (AM. BAR ASS'N 2015) (Conversion and Misappropriation) ("A court may apply Rule 1.15 ... to a lawyer who misuses money that belongs to a law firm.").

Second, Mr. Jordan violated Rule 1.15(a) by overpaying himself or his co-counsel using client funds. In the Client A case, Mr. Jordan settled the case and overpaid himself by $666.67. In the Client C case, Mr. Jordan settled the case and paid himself a forty-percent fee despite agreeing to a one-third fee. He then transferred the funds held in trust for the client—minus $382.21—into a certificate of deposit account but could not locate the additional $382.21 he failed to transfer.

Because he overpaid himself and lost a portion of the funds, he failed to hold the client's money in trust as required by Rule 1.15(a).

As noted above, in the Client E case, Mr. Jordan agreed to evenly share the fee with another attorney, used his half of the fee to cover a shortage in another client's account ledger, paid himself co-counsel's share of the fee, then paid himself half the fee again. This overpayment to himself came out of client funds in violation of Rule 1.15(a). In the Client J class action case, Mr. Jordan deposited a settlement installment into a trust account. He then transferred the settlement installment—minus approximately $10,000—into a different trust account. Mr. Jordan could not account for the missing $10,000. Mr. Jordan later erroneously paid himself $10,000 more than he was entitled to receive for reimbursement of expenses. Therefore, he did not properly hold his clients' funds separate from his own. In the same case, Mr. Jordan also could not locate approximately $12,000 that had not been claimed and therefore should have remained in a trust account.

The third way Mr. Jordan violated Rule 1.15(a) is he failed to maintain adequate records of money held in trust for clients and co-counsel. In three cases, Mr. Jordan transferred funds held in trust for a client through several trust accounts but did not keep records of the transfers. In two cases, Mr. Jordan overdrew a client's trust account ledger when he paid his co-counsel because he had already paid himself the full fee, did not keep a record of the payment to himself, and therefore claims he did not realize he had already paid himself the full fee when he paid his co-counsel. Additionally, in two cases, Mr. Jordan claims he left funds in trust for his clients when he dissolved his law firm. However, when he asked his former partner to disburse the funds he claimed were still in a trust account, his former partner informed him there were no funds held in trust for those clients.

Despite his agreement to stipulate to the facts alleged and waive an evidentiary hearing, Mr. Jordan portrays his Rule 1.15(a) violations as simple mistakes by arguing he did not realize he had already paid himself his share of the fee. We find Mr. Jordan violated the rule in each of the instances described above, and none of the violations were merely

technical. The recordkeeping provision of Rule 1.15(a) protects lawyers who obey the rule because they always have detailed records to show how client funds and the funds of others were maintained and distributed. The recordkeeping provision also prevents lawyers who disobey the rule from claiming they made a simple mistake. In Mr. Jordan's case, he admitted violating the recordkeeping provision of Rule 1.15 in several cases in the first set of formal charges. At the same time he claimed to the hearing panel he was making a "serious effort" to comply with the Rules of Professional Conduct, he not only continued to commingle client and co-counsel funds with his own in violation of Rule 1.15(a), he also continued to conceal that misconduct by failing to keep adequate records. These violations were not simple mistakes—they were intentional.[3]

### E. Rule 1.15(d), RPC

When a lawyer receives funds in which a client or third person has an interest, the lawyer "shall promptly notify the client or third person." Rule 1.15(d), RPC. Additionally, the lawyer must "promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." *Id.* As we noted in our analysis of Rule 1.15(a), a "third person" under this rule includes co-counsel.

In four cases described in the first set of formal charges— the Client A, D, E, and N cases—Mr. Jordan agreed to share a fee with co-counsel but did not promptly notify co-counsel or promptly deliver co-counsel's share of the fee. The amount of

---

3. Rule 1.15 does not include an element of intent. *See Attorney Grievance Comm'n v. Stolarz*, 379 Md. 387, 842 A.2d 42, 49 (2004) (applying a rule similar to our Rule 1.15 and stating, "This Court has explained on numerous occasions that with regard to Rule 1.15 'an unintentional violation of this rule ... is still a violation of the attorney's affirmative duties imposed by the rule' " (alteration in original) (quoting *Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 741 A.2d 1143, 1154 (1999))); *In re Mayeux*, 762 So.2d 1072, 1075 (La. 2000) (applying a rule similar to our Rule 1.15 and stating, "The lawyer's mistake, good faith, or lack of conscious wrongdoing does not negate an infraction of the rule, but bears only on the penalty to be imposed." (citation omitted)). Thus, our finding that Mr. Jordan acted intentionally is not necessary to find he violated Rule 1.15, but does factor into whether he

time between settlement and payment to co-counsel in these cases ranged from six months to two and a half years.

Mr. Jordan also failed to comply with Rule 1.15(d) in at least six cases described in the second set of charges. In those cases, Mr. Jordan and the referring attorney agreed to evenly share the fee Mr. Jordan received when he resolved the case. When Mr. Jordan settled each case, he collected the fee but did not notify the referring attorney he had received the fee. He also misrepresented to the referring attorney that several of the cases were still pending months after settling the cases, thereby concealing from the referring attorney that he was holding funds in which he knew the referring attorney claimed an interest. Moreover, Mr. Jordan did not promptly deliver the referring attorney's share of the fee in those six cases, and in two cases, Mr. Jordan still has not delivered the referring attorney's share. Because Mr. Jordan did not promptly notify his co-counsel or promptly deliver co-counsel's funds, he violated Rule 1.15(d).

### F. Rule 1.15(f), RPC

Rule 1.15(f)(1) prohibits lawyers from disbursing trust account funds "unless the funds to be disbursed have been deposited in the account and are collected funds." The comments to Rule 1.15 explain the "requirement in Rule 1.15(f)(1) that funds be deposited and collected in the lawyer's trust account prior to disbursement is fundamental to proper trust accounting." Rule 1.15, cmt. 5, RPC. To comply with Rule 1.15(f)(1), a lawyer must wait until a check deposited in a trust account has cleared the bank before disbursing the funds from the check. Rule 1.15(f)(2) provides exceptions to the Rule 1.15(f)(1) requirements. *See, e.g.*, Rule 1.15(f)(2)(iii), RPC (providing an exception for a "properly endorsed government check"); Rule 1.15(f)(2)(iv), RPC (providing an exception for checks from insurance companies that do not exceed $50,000).

Mr. Jordan violated Rule 1.15(f)(1) in six cases—four cases described in the first set of formal charges and two cases described in the second set of charges. In each of those cases, Mr. Jordan received settlement checks and deposited the checks in a trust account. On the day of the initial deposit or the day after the deposit, Mr. Jordan wrote checks for the funds from the trust account to his law firm's accounts—

---

violated Rule 8.4(d) and our decision regarding the appropriate sanction.

before his bank collected the money. The Rule 1.15(f)(2) exceptions do not apply to any of these cases. Therefore, Mr. Jordan's disbursement of funds in each of the six cases violated Rule 1.15(f)(1). *See* Rule 1.15, cmt. 8, RPC ("A lawyer's disbursement of funds from a trust account in reliance on deposits that are not yet collected funds in any circumstances other than Subsections (i) through (vi) of Rule 1.15(f)(2) may be grounds for a finding of professional misconduct.").

## G. Rule 8.4(d), RPC

 Rule 8.4(d) states, "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

When the panel reevaluated its recommendation after considering the second set of charges, it found Mr. Jordan had "dishonest and selfish motives" and engaged in "deceit and misrepresentation in the disciplinary investigation" in violation of Rule 8.4(d). The panel placed particular reliance on the timing of Mr. Jordan's misconduct—many of his acts of misconduct in the second set of charges occurred after Disciplinary Counsel filed the first set of formal charges on January 7, 2011, and some of the misconduct occurred even after the December 5, 2011 hearing on the first set of charges. The panel found, "Because the instances of converting co-counsel's earned fees to his own use continued long after [Mr. Jordan] purportedly addressed his staffing and accounting issues, resolved his family problems, and successfully overcame a debilitating mental disorder and addiction, we can only attribute his ongoing misconduct to selfish and dishonest motives." For example, in May 2011—approximately four months after the first set of charges—Mr. Jordan settled the Client S case, did not hold his co-counsel's share of the fee in trust or inform co-counsel of the settlement, and deposited the entire fee into his operating account. In June 2011, December 2011, and January 2012, Mr. Jordan informed his co-counsel that two cases were still pending, despite settling the cases months earlier. Similarly, the majority of the misconduct in the three other cases occurred after Disciplinary Counsel filed the first set of formal charges covering the same misconduct.

The panel found Mr. Jordan engaged in "false statements and other deceptive practices during the discipline process,"

such as misrepresenting that he had resolved the "bookkeeping" issues that he blamed at the December 2011 hearing for his failure to maintain adequate records of his trust accounts. The timing supports the panel's conclusion. Mr. Jordan was engaging in misconduct at the same time he asserted to the panel he had fixed the issues he blamed for identical misconduct in the first set of charges. In his March 2011 response to the first set of charges, Mr. Jordan asserted he "demonstrated he can ethically run a law practice for the last half a decade and he has put in place the appropriate safeguards to ensure that this issue never recreates itself." Contrary to that assertion, Mr. Jordan committed much of the misconduct in the second set of charges within several months of his response, and he lied to his co-counsel about the status of two cases within weeks of appearing at the hearing. The panel responded in the following manner to Mr. Jordan's claim that he had "turn[ed] his practice into a model of how to practice law in an appropriate way":

> Yet, less than two months before the hearing, [Mr. Jordan] had misappropriated [the referring attorney's] earned fees of $2,500.00 in the [Client T] matter. . . . Just about a week after the hearing, [Mr. Jordan] misappropriated [the referring attorney's] earned fees of $1,800.00 in the [Client U] matter. And, on January 10, 2012, [Mr. Jordan] was assuring [the referring attorney] that these cases were still pending.

> Mr. Jordan also claimed he discontinued his practice of disbursing attorney's fees and costs before his bank collected the funds—in violation of Rule 1.15(f)—by asserting at the December 2011 hearing, "That's no longer the practice we do at all." The panel again rejected Mr. Jordan's claim and stated, "To the contrary, . . . that is exactly what [Mr. Jordan] continues to do. In May 2011, he paid himself over $34,000.00 in attorney's fees and costs in the [Client S] matter the day after deposit. In September 2012, he paid himself $200,000.00 in attorney's fees in the [Client V] matter the day after deposit."

Mr. Jordan has demonstrated he is a highly intelligent individual who has successfully represented many clients during his career. Throughout these proceedings, he has claimed he made honest mistakes regarding the distribution of money

and never intended to take his co-counsels' money. Given the timing of his misconduct in relation to these disciplinary proceedings, however, we cannot accept Mr. Jordan's claim. It is difficult to believe a lawyer of Mr. Jordan's intelligence and experience who has been formally charged with taking money owed to co-counsel could be so careless as to settle a case and not check to see if any co-counsel was entitled to a portion of the fee or verify whether he had settled the case before telling co-counsel the case was still pending. As the panel noted, "it defies logic that he would be so careless given the serious nature of the disciplinary proceedings against him at the time." We find this misconduct was not careless—it was intentional.

Thus, we agree with the hearing panel and find Mr. Jordan committed professional misconduct on multiple occasions by "engag[ing] in conduct involving dishonesty, fraud, deceit [and] misrepresentation" in violation of Rule 8.4(d).

### III. Sanction

 Mr. Jordan argues his misconduct was unintentional and the panel's original recommendation of a public reprimand is the appropriate sanction. He admits failing to keep required records, but he contends this lack of records caused him to make innocent mistakes when he misrepresented the status of his cases to co-counsel. Additionally, Mr. Jordan argues this case arose from a civil dispute with the referring attorney over fees and is therefore inappropriate for a disciplinary proceeding. In support of that argument, Mr. Jordan cites twenty-seven cases over the last three years in which this Court has disbarred a lawyer. In those twenty-seven cases, Mr. Jordan contends, no lawyer has been disbarred for a fee dispute with another lawyer or for failing to obtain a client's consent to a fee-sharing arrangement. Finally, Mr. Jordan argues his personal problems—particularly a battle with lymphoma—mitigate the severity of his misconduct. Accordingly, Mr. Jordan argues the appropriate sanction is a public reprimand.

We acknowledge much of Mr. Jordan's misconduct, such as that described in the first set of formal charges, warrants only a public reprimand. However, considering his pattern of misconduct as a whole—including the timing of the allegations—

we agree with the panel that Mr. Jordan's misconduct was the product of "selfish and dishonest motives" rather than "a series of simple oversights and accounting errors." Thus, a public reprimand is inadequate and a more severe sanction is warranted.

First, in its report on the first set of charges, the panel considered "the fact that [Mr. Jordan] has been cautioned before for concerns about Rule 1.15" as an aggravating factor. In its report on the second set of charges, the panel found "a continuation of this pattern of misconduct during the time period leading up to—and continuing for some time after—the disciplinary hearing held on December 5, 2011." For example, Mr. Jordan's repeated failure to keep required records— particularly as to the second set of charges—allowed him to deny intentional misconduct throughout Disciplinary Counsel's investigation into both the first set of charges and the second set of charges. The hearing panel noted Mr. Jordan's claim "that his misconduct was 'simply a failure to keep adequate records' and 'at worst negligent.'" Like the hearing panel, we are unpersuaded by Mr. Jordan's argument that his lack of records caused him to make innocent mistakes.

Second, we have considered Mr. Jordan's arguments that this is a civil fee dispute and no lawyer has been disbarred for failing to disclose a fee-sharing arrangement to a client. Mr. Jordan and his co-counsel do have a civil dispute over some of their fee-sharing arrangements, but within that dispute arose allegations—and now findings—of professional misconduct. We are not imposing—and the panel is not recommending—a sanction on Mr. Jordan solely for his civil fee dispute or his failure to obtain his clients' consent to fee-sharing arrangements. Rather, the sanction is based on a pattern of intentional misconduct over many years, including multiple instances of Mr. Jordan deliberately using shoddy recordkeeping to cover up his attempts to steal fees from his co-counsel.

Third, we are highly sensitive to Mr. Jordan's personal problems, including his prescription drug addiction, his family issues, and his assertion that his struggle with lymphoma caused him to make careless mistakes. As to the prescription drug issues, Mr. Jordan explained he was addicted to benzo-diazepines from 1997 through 2004. Although he overcame his

addiction in 2004, he argues such an addiction can have long-term cognitive effects, including memory loss. As to his health issues, Mr. Jordan filed affidavits prior to oral argument from two doctors explaining he may have been suffering from symptoms of lymphoma as early as March or April 2011. In one of the affidavits, a doctor stated, "Lymphoma can affect a patient's ability to complete normal activities of daily living and it was clearly impacting his ability to function." Mr. Jordan cites Standard 9.3 of the American Bar Association's Annotated Standards for Imposing Lawyer Sanctions to support his argument that this Court must consider his mitigating factors. Standard 9.32 does include mental disability and chemical dependency as factors that *may* be considered in mitigation. However, the timing of Mr. Jordan's misconduct in the second set of charges undermines his arguments. That misconduct began around September 2010 when Mr. Jordan accepted a fee and failed to pay co-counsel's share in the Client P case. Standard 9.32(i) provides the factors serve as mitigation "*when* ... the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and *recurrence of that misconduct is unlikely*." ANN. STANDARDS FOR IMPOSING LAWYER SANCTIONS 9.32(i) (AM. BAR ASS'N 2015) (emphasis added). Mr. Jordan engaged in a pattern of misconduct prior to the earliest possible beginning of his cancer symptoms and well after he overcame his prescription drug problems, and he continued that pattern for several years. In fact, Mr. Jordan stipulated his "medical conditions arose after the conduct set forth in [the second set of charges] and [he] does not assert that those conditions had any causative effect on that conduct." Therefore, his personal problems and health problems do not mitigate the need for a severe sanction.

Finally, the timing of Mr. Jordan's misconduct cannot be reconciled with his assertion that the misconduct was accidental. As we noted in our analysis of Rule 8.4(d), RPC, Mr. Jordan is a highly intelligent person. It makes no sense that a person of Mr. Jordan's intelligence and experience could "accidentally" fail to pay his co-counsel, then—while under investigation by Disciplinary Counsel for doing so—continue to accidentally do the same thing. As the panel noted in its report on

the second set of charges, "Even if we were to give [Mr. Jordan] the benefit of the doubt and attribute his repeated misrepresentations to [the referring attorney] to inadvertence or poor recollection, it defies logic that he would be so careless given the serious nature of the disciplinary proceedings pending against him at the time." Standing alone, the failure to pay co-counsel in the first set of charges would not support a finding of dishonesty, fraud, deceit, or misrepresentation. The second set of charges, however, in which Mr. Jordan committed the misconduct at the same point in time he was claiming the previous conduct was accidental and he had taken steps in the management of his firm to prevent it, leave no room for any finding other than intentional misconduct. As we have stated, much of Mr. Jordan's misconduct does not warrant more than a public reprimand. We agree with the panel, however, that Mr. Jordan's conduct in the second set of charges was "selfish and dishonest" and therefore violated the Rule 8.4(d) prohibition against "conduct involving dishonesty, fraud, deceit or misrepresentation."

"This Court has recognized that 'the primary purpose of disbarment ... is the removal of an unfit person from the profession for the protection of the courts and the public, not punishment of the offending attorney.'" *Davidson*, 409 S.C. at 328, 762 S.E.2d at 559 (quoting *In re Pennington*, 393 S.C. 300, 304, 713 S.E.2d 261, 263 (2011)). We find the deliberate misconduct Mr. Jordan repeatedly committed over a long period of time places him squarely into the category of people for which disbarment is appropriate.

## IV. Conclusion

Mr. Jordan is **DISBARRED**. Within fifteen (15) days of the date of this opinion, Mr. Jordan shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur. Acting Justice Pleicones not participating.